**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------X

MARCUS STINSON,                                     Case No.    17-cv-3949

                                  Plaintiff,        **COMPLAINT**

                -against-

                                                    **JURY TRIAL DEMAND**

CITY UNIVERSITY OF NEW YORK, JUDITH
BERGTRAUM, VINCENT GREEN
and JOHN ANTONELLI,

                                  Defendants.
----------------------------------------------------------------X

Plaintiff, Marcus Stinson ("Plaintiff" or "Mr. Stinson"), by and through his attorneys,

Ballon Stoll Bader & Nadler, P.C., complaining of Defendants City University of New York

("CUNY"), Judith Bergtraum ("Ms. Bergtraum"), Vincent Green ("Mr. Green") and John

Antonelli ("Mr. Antonelli") (collectively "Defendants"), alleges with personal knowledge, unless

where upon information and belief is stated, the following:

1.      This action is brought to remedy the Defendants' intentional, unlawful

discrimination against, harassment of, and retaliation against Plaintiff based on his race in violation

of Title VII of Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e seq. ("Title VII"), 42

U.S.C. §§ 1981, 1983 and 1985, the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12111

et seq., the Family Medical Leave Act, 29 U.S.C. §§ 2601 et seq. ("FMLA"), Executive Law of

the State of New York, New York State Human Rights Law § 296, et seq. ("Executive Law"), and

the Administrative Code of the City of New York, New York City Human Rights Law, § 8-101,

et seq. ("Administrative Code").

1

## THE PARTIES

1.      Plaintiff is an African-American male.

2.      Plaintiff is a resident of the State of New York.

3.      At all relevant times, Plaintiff was a CUNY Office Assistant for the Office of Facilities, Planning, Construction and Management ("FPCM").

4.      Defendant City University of New York ("CUNY") is a New York State Agency.

5.      Upon information and belief Defendant Judith Bergtraum is a resident of the State of New York.

6.      At all relevant times hereinafter mentioned, Defendant Judith Bergtraum was a Vice Chancellor of the Office of Facilities, Planning, Construction and Management ("FPCM").

7.      Upon information and belief Vincent Green is a resident of the State of New York.

8.      At all relevant times hereinafter mentioned, Defendant Vincent Green was a Director of the Department of Vendor Integrity and Investigations ("VII") employed by CUNY.

9.      Upon information and belief John Antonelli is a resident of the State of New York.

10.     At all relevant times hereinafter mentioned, Defendant John Antonelli was an Executive Director of Administration for the Office of Facilities, Planning, Construction and Management ("FPCM") employed by CUNY .

## PROCEDURAL BACKGROUND

11.     On or about June 28, 2016, and again on March 7, 2016 Plaintiff timely filed a charges of discrimination against Defendants with the Equal Employment Opportunity Commission ("EEOC").

a.      Plaintiff's Notices of the Right to sue are attached hereto collectively as **Exhibit 1**.

b.     The instant action is timely because it was initiated within ninety (90) days of Plaintiff's receipt of the aforementioned Notice of Right to Sue; and

c.     Plaintiff has exhausted his federal administrative remedies as concern the allegations of this Complaint.

## JURISDICTION and VENUE

12.     This court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. § 1331 as this action arises under the laws of the United States.

13.     This Court has supplemental (pendent) jurisdiction over Plaintiff's New York State and New York City claims pursuant to 28 U.S.C. § 1367(a). The New York State and New York City discrimination claims are inexorably related to, arise out of the same operative facts and circumstances as, and are a necessary, integral part of the federal law claims, such that the federal claims and New York State and New York City law claims form part of the same case or controversy.

14.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)(2) as events occurred in the Southern District of New York.

15.     The principal place of business of the City University of New York is at 217 E. 42nd Street New York, New York 10017.

16.     Plaintiff has satisfied the procedural and administrative requirements for proceeding under Title VII.

## **FACTS**

17.     Plaintiff commenced employment with the City University of New York ("CUNY") in February of 2007 as a College Assistant in the Department of Space Planning ("SP") within the Office of Facilities, Planning, Construction and Management ("FPCM").

18.     On July 20, 2009 Plaintiff was promoted to the CUNY Office Assistant position and was assigned to the FPCM Department.

19.     From April of 2009 to September of 2015, Plaintiff performed out-of-title duties as a Facilities Coordinator for the FPCM Department.

20.     In August of 2015, Plaintiff received an outstanding evaluation. He has received consistent praise, documented from past supervisors, including, but not limited to, Nancy Nichols, Ann Schiavone and Alfred Toscano.

21.     On September 17, 2015, Plaintiff was involuntarily transferred to the Vendor Integrity and Investigations Department ("VII") under Director Vincent Green.

22.     Upon information and belief, Plaintiff's involuntary transfer was due to his race (African-American) and disability.

23.     Upon information and belief, other similarly situated non-disabled, non-African-American employees were not involuntarily transferred or subjected to other discriminatory treatment.

24.     The first justification that CUNY stated as the reason for this involuntary transfer was "budget issues."

25.     On September 15, 2015, during the notification meeting, when Plaintiff questioned the justification, the stated reason changed to "resource management issues," and towards the end of the meeting reverted to "budget issues."

26.    Plaintiff was the only employee, out of over one hundred (100) employees, transferred out of the FPCM, for alleged "budget issues" and "resource management issues" that according to the management affected "all FPCM staff."

27.    On October 5, 2015 Plaintiff emailed Defendant Bergtraum, Vice Chancellor of FPCM, complaining about the discriminatory treatment he was subjected to, due to his race (African-American), specifically regarding his transfer and how he believed it was racially motivated.

28.    On October 14, 2015. Ms. Bergtraum responded, stating that Plaintiff's transfer was "based on staffing needs of the Vendor Integrity Unit."

29.    Upon information and belief, Plaintiff was provided with many pretextual justifications as the basis for his involuntary transfer, including but not limited to "staffing needs of the Vendor Integrity Unit," from a number of different superiors.

30.    From September 21, 2015 through November 11, 2015, Plaintiff was on approved medical leave ("FMLA") for, including but not limited to, depression.

31.    On October 16, 2015 Plaintiff requested an alternative lateral transfer to the Energy & Facility Sustainability Unit within FPCM's Department of Design, Construction & Management ("DDCM"), in his original 16th floor cubicle, under the supervision of Arthur Fasolino. However, Defendant Bergtraum never responded to Plaintiffs email, effectively denying Plaintiff's request.

32.    Upon information and belief, Plaintiff's request was denied as retaliation for him taking approved sick leave under the FMLA.

33.    Upon information and belief Plaintiff's request was also denied due to his race (African-American) and disability.

34.     Upon information and belief, Plaintiff's request was also denied as retaliation for complaints of discrimination.

35.     Prior to Plaintiff's November 11, 2015 date to return to work, he requested the reasonable accommodation of a modified work schedule.

36.     On November 10, 2015, Plaintiff was ordered by CUNY to visit a doctor of their choice for a second opinion, after requesting a modified work schedule upon his return from approved FMLA sick leave and providing the relevant submissions from his treating physician.

37.     At the doctor's appointment, the doctor tried to convince Plaintiff that he was not depressed and told him that he was trying to "save his job." In other words, if Plaintiff was depressed CUNY would fire him. The doctor also advised Plaintiff to take Xanax and "go to work."

38.     On November 23, 2015, Plaintiff's request for a modified work schedule was denied by Human Resources, and Ms. Bergtraum received a copy of that denial letter.

39.     Defendants failed to accommodate Plaintiff, despite his request for a reasonable accommodation and failed to provide evidence of any undue hardship they would endure were the request granted.

40.     Upon information and belief, the denial of Plaintiff's reasonable accommodation request was in retaliation for his approved FMLA sick leave.

41.     Upon information and belief, the denial of Plaintiff's reasonable accommodation request was an adverse discriminatory action taken against Plaintiff based on his race (African-American) and his disability.

42.     Upon information and belief, Plaintiff's request for a reasonable accommodation was also denied in retaliation for his complaints of discrimination.

43.     On November 24, 2015, Ms. Ranjitsingh, the Director of Operations for FPCM and Project Coordinator for Vendor Integrity's scanning project ("CASO"), made requests for Plaintiff's timesheet and medical information from Mr. Green and Harold Thompson. She asked again for the same information on December 2, 2015.

44.     Upon information and belief, no other similarly situated non-African American employees were subjected to this type of scrutiny and disparate treatment.

45.     Upon information and belief, no other similarly situated non-disabled employees were subjected to this type of scrutiny and disparate treatment.

46.     Upon information and belief, no other similarly situated employees who had not taken FMLA approved sick leave were subjected to this type of scrutiny and disparate treatment.

47.     Upon information and belief, this type of scrutiny and disparate treatment was retaliation for Plaintiff taking sick leave and for Plaintiff's complaints of discrimination.

48.     Plaintiff was assigned additional, menial tasks outside the scope of his duties and responsibilities, including, but not limited to, assembling storage boxes, emptying file cabinets, and transporting boxes between different rooms in the office.

49.     Upon information and believe, no other similarly situated, non-disabled, non-African American co-workers of Plaintiff's, who, were assigned additional, menial tasks outside the scope of their duties and responsibilities, including, but not limited to, assembling storage boxes, emptying file cabinets, and transporting boxes between different rooms in the office.

50.     At the meeting with Mr. Green, Mr. Piazza, Ms. Pompura, Mr. Thompson and employees working on the scanning project, one of the employees made an offensive statement to Plaintiff stating "from what I understand you are going to be the muscle that moves the boxes,"

and nobody made any attempt to correct this statement. Moreover, Mr. Green looked at Plaintiff with agreement.

51.    Upon information and belief, Plaintiff was subjected to this disparate treatment due to his race (African-American).

52.    Upon information and belief, no other similarly situated non-African American employees were referred to this way.

53.    Upon information and belief, no other similarly situated non-African-American employees were assigned additional tasks outside the scope of their duties and responsibilities.

54.    Upon information and belief, Plaintiff was subjected to this treatment as retaliation for his October 5, 2015 complaint of racial discrimination.

55.    Upon information and belief, Plaintiff was subjected to this treatment as retaliation for taking FMLA approved sick leave.

56.    On December 30, 2015, Plaintiff filed a Step 1 grievance with Human Resources for the discriminatory involuntary transfer and arguable demotion, as well as out-of-title work as a Facilities Coordinator.

57.    Human Resources repeatedly tried to prevent Plaintiff from submitting the grievance and gave him false information, stating that he had to file his grievance through the Union- DC37.

58.    It was not until Plaintiff cited the governing Collective Bargaining Agreement ("CBA") that Human Resources finally accepted his grievance.

59.    On February 18, 2016, Plaintiff received a decision from Human Resources for his Step 1 grievance, which was denied in full, stating that Plaintiff failed to establish he had been

subjected to an involuntary transfer, discrimination in employment opportunities and/or out-of-title work, and violations of the CBA.

60.    The decision denied Plaintiff's voluntary transfer rights, stating that he had been transferred to another unit and not to another department, therefore he does not have a right to complain.

61.    Plaintiff's "proposed remedies" were referred to as a "list of demands."

62.    On February 17, 2016, Plaintiff submitted his Step 2 grievance to CUNY's Office of Labor Relations regarding involuntary transfer, demotion, out-of-title assignments and racial discrimination.

63.    On or about March 7, 2016, Plaintiff filed a charge of discrimination, based on racial discrimination, with the Equal Employment Opportunity Commission ("EEOC").

64.    After Plaintiff filed with the EEOC, Defendants further discriminated and retaliated against him.

65.    Upon information and belief, all written reprimand memos were issued to Plaintiff after he filed charges with the EEOC on March 7, 2016. Prior to that, Plaintiff had never been written up in nearly ten (10) years of service for CUNY.

66.    Upon information and belief, these written reprimands and memos were retaliation against Plaintiff for filing his EEOC complaint.

67.    In March of 2016, Plaintiff was called into a meeting with Mr. Green, Joseph Piazza and Harold Thompson, and questioned about circumstances of his employment, including, but not limited to, the then-pending Step 2 grievance and FMLA leave.

68.    Soon after the meeting, on March 14, 2016, Mr. Green made his first attempt to change Plaintiff's work schedule.

69.     Plaintiff's grievance was denied in full in a decision dated April 18, 2016. Upon information and belief, the decision featured multiple fabricated statements from Mr. Green, who alleged that Plaintiff was "personally" approaching him about the possibility of transferring into his department since 2011.

70.     Upon information and belief, Mr. Green made many false statements about Plaintiff that had significant effects and an adverse impact on the Step 2 grievance decision, while it contained no statements from Plaintiff's former supervisor Mr. Alfred Toscano.

71.     This decision also offered another rationale for Plaintiff's involuntary transfer, stating that it was due to Mr. Toscano's retirement.

72.     The grievance decision also stated that Plaintiff's out-of-title assignments claim was moot, because he missed a filing deadline, which in fact he did not. Pursuant to the CBA's 120-day filing deadline Plaintiff's out-of-title claim for Facilities Coordinator work was timely. Plaintiff was performing Facilities Coordinator work until September 16, 2015 and he filed his grievance on December 30, 2015.

73.     Plaintiff was not requesting past money for his out-of-title Facilities Coordinator work claim as CUNY incorrectly stated in the Step 2 grievance decision and what would be governed by the CBA's 30-day filing deadline. Instead, he was asking for title reclassification to the Facilities Coordinator position and a salary adjustment going forward.

74.     Upon information and belief, Plaintiff was the only one out of three employees (3) in Mr. Toscano's unit that was involuntarily transferred.

75.     Upon information and belief, similarly situated non-African-American employees were not subject to this type of treatment.

76.     Upon information and belief, similarly situated non-disabled employees were not subject to this type of treatment.

77.     Upon information and belief, similarly situated employees who had not taken approved FMLA sick leave were not subject to this type of treatment.

78.     On June 6, 2016, Mr. Green attempted to legitimize his false statements about Plaintiff that he first made in Step 2 grievance decision.

79.     On June 28, 2016, Plaintiff filed an additional charge of discrimination with the EEOC.

80.     On September 15, 2016, Plaintiff overheard that Mr. Green made a joke about him placing a spy camera in Mr. Green's office and his supervisor Harold Thompson, burst out into laughter after this malicious comment.

81.     On September 19, 2016, Mr. Green escalated his efforts against Plaintiff, sending him a "notice of unprofessional behavior" email.

82.     On September 24, 2016, Plaintiff was assigned with a manufactured six (6) year report assignment, which was sent as a group email, but upon information and belief, was truly aimed only at Plaintiff.

83.     On September 30, 2016, Plaintiff emailed the management outlining his concerns and articulating complaints about the acts of discrimination and retaliation against him in department VII.

84.     On October 3, 2016, Plaintiff was called into an impromptu interrogation with Mr. Green and Joseph Piazza and was issued a "close of business deadline" to complete work on an ISLG assignment that had already been completed by another staff member.

85.     Plaintiff was threatened with insubordination and this incident caused him to have an anxiety attack.

86.     Upon information and belief, similarly situated non-African-American employees, and/or employees with disabilities were not subject to this type of treatment that included, but was not limited to completing work on an assignment that had already been completed by another staff member.

87.     Upon information and belief, these actions were taken against Plaintiff due to his race (African-American) and were also acts of retaliation after Plaintiff's complaints of discriminatory treatment, grievances, FMLA sick leave, and EEOC charges.

88.     On October 3, 2016 Plaintiff was also issued a written reprimand that was authored, in part, by one of John Antonelli's (superior to Mr. Green) secretaries- Angela Gutierrez.

89.     On October 3, 2016, Plaintiff requested a reasonable accommodation for transfer to the Energy & Facility Sustainability Unit and sent email to senior CUNY management repeating his concerns of racial discrimination and retaliation. Plaintiff also attached his email to VII management, dated September 30, 2016.

90.     On October 5, 2016, Plaintiff emailed senior CUNY management, fully illustrating Mr. Green's manufactured evidence attempt against him from June of 2016.

91.     On or about October 5, 2016, when Plaintiff accidentally fell asleep at his desk due to a high dosage of prescribed medication, Mr. Piazza aggressively banged on Plaintiff's desk to wake him up. The medication that Plaintiff was taking was the same medication that CUNY's doctor advised him to take, with drowsiness as a side effect.

92.    On or about October 13, 2016, when Plaintiff again accidentally fell asleep at his desk, Mr. Green took pictures of him sleeping and used them as an evidence for a disciplinary charge against Plaintiff.

93.    On October 18, 2016, Mr. Green attempted to hold Plaintiff responsible for another employee's job responsibilities.

94.    On October 19, 2016, Mr. Green made a decision that Plaintiff was no longer responsible for answering Mr. Piazza's phone and maintaining his calendar. By the end of that week Plaintiff's caller identification display was changed so that he could no longer see who was calling Mr. Green and Mr. Piazza.

95.    Upon information and belief, the aforementioned happened only to prevent Plaintiff from documenting who was calling Mr. Green and Mr. Piazza.

96.    On October 20, 2016, Human Resources updated Plaintiff about the status of his reasonable accommodation request stating that they had requested further clarification from his doctor.

97.    On October 26, 2016, Mr. Green issued another written reprimand to Plaintiff.

98.    On October 27 and October 31, 2016 Plaintiff sent an email to senior CUNY management with all the details and factual account of the discrimination he was receiving in VII.

99.    On October 31, 2016, Plaintiff's computer was compromised by Mr. Green with the aid of two IT technicians, upon information and belief, to make it a tool of enhanced surveillance.

100.    As the result of the foregoing, Plaintiff refrained from using his work computer.

101.    On November 1, 2016, Mr. Green had Shirley Pompura issue a work order for IT to examine Plaintiff's computer for "loud noises." Upon information and belief, this was an attempt to downplay Plaintiff's complains about computer issues from the previous day.

102.    On November 8, 2016, Plaintiff's reasonable accommodation request was denied.

103.    Upon information and belief, the information CUNY requested from the doctor had little-to-no impact on their decision. Moreover, there was no undue hardship cited as the reason for not providing the accommodation.

104.    Upon information and belief, Plaintiff's reasonable accommodation request was denied in retaliation for his EEOC charge, complaints of discrimination, and for taking approved FMLA sick leave.

105.    Upon information and belief, Plaintiff's reasonable accommodation request was denied based on his race (African-American) and disability.

106.    Plaintiff appealed the reasonable accommodation denial and CUNY's Human Resources office requested more information from Plaintiff, despite the fact they had already gotten all Plaintiff's documents.

107.    On November 16, 2016, Plaintiff was issued another written reprimand. Plaintiff pointed out to Mr. Green that this matter did not have to result in disciplinary charges but Mr. Green did not appear responsive.

108.    On November 17, 2016, Plaintiff sent another email to senior CUNY management regarding the racially discriminatory treatment to which he was continuously subjected. In response, Michael Valante asked Plaintiff to fill out a complaint form with his office. Plaintiff explained why he did not file an internal complaint, citing several issues with the policy.

109.    On November 18, 2016, Mr. Green accused Plaintiff of harassing him and directed Plaintiff to stop sending him emails with complaints about discrimination incidents in his department. Plaintiff stopped sending emails to Mr. Green, but he continued to contact senior CUNY management including, but not limited to, Ms. Bergtraum.

110.    On November 21, 2016, CUNY denied Plaintiff's reasonable accommodation appeal, but it was not until December 7, 2016 that Plaintiff received the notification.

111.    The appeal denial again did not cite any undue hardship on the part of Defendants that would justify the reasonable accommodation denial. Defendants used Plaintiff's 8 am-4 pm schedule as a partial justification and blamed Plaintiff for not identifying what the essential functions of his job were, despite the fact that the essential job functions were written on CUNY's reasonable accommodation request form.

112.    Again, upon information and belief, this reasonable accommodation request appeal denial was in retaliation for Plaintiff's FMLA approved sick leave, EEOC charges and complaints of discrimination.

113.    Upon information and belief, this reasonable accommodation request appeal denial was based on Plaintiff's race (African-American) and disability.

114.    On December 13, 2016, Plaintiff went to the upper 16th floor to visit FPCM co-workers and when he returned he was immediately called into an impromptu interrogation in  Mr. Green's office and was asked "what business of Vendor Integrity's do you have on the 16th floor." Plaintiff found this question very hypocritical, as upon information and belief, Mr. Green operates his private company from his CUNY office and receives many phone calls during the day.

115.    At this meeting, Plaintiff was informed that his 8am -4 pm work schedule was being changed to 9am-5 pm and was not given any justification for this change.

116.    Another example of enhanced surveillance towards Plaintiff was Mr. Piazza's routine walk by Plaintiff's cubicle only to stare at him.

117.    On December 19, 2016, Plaintiff's access card to the office did not work and he had to ask another employee of Vendor Integrity to let Plaintiff into the office.

118.    Plaintiff emailed Gloria Deschamps, who is responsible for ID card access permission, but she has never responded to Plaintiff's email.

119.    Upon information and belief, CUNY's retaliation and harassment efforts were coordinated and various supports were given to Mr. Green to help him facilitate his attempted constructive dismissal of Plaintiff.

120.    On December 20, 2016, Mr. Green again assigned Plaintiff with another employee's, Ms. Pompura 's, job responsibilities and asked Plaintiff to "clear out" his "overflowing" outbox.

121.    Upon information and belief, Mr. Green attempted to make it appear as though Plaintiff was slowing down the department's work, by not completing his manufactured six (6) year report, Mr. Green's outbox processing and ISLG assignments.

122.    CUNY denied Plaintiff's reasonable accommodation request twice, using his 8am to 4 pm schedule as partial reasoning. After that, Mr. Green changed Plaintiff's schedule, without any reason, one week after Plaintiff received his reasonable accommodation appeal decision.

123.    On December 20, 2016, Plaintiff received the response to his December 13, 2016 email regarding his work schedule change. Mr. Valente responded with a request for Plaintiff to justify why he needed 8am-4pm schedule as another reasonable accommodation request

124.    Plaintiff's primary reasonable accommodation request was for transfer to the Energy & Facility Sustainability Unit and scheduling was only to be coupled with that request, not to constitute a separate reasonable accommodation request.

125.    Mr. Valente, instead of asking Mr. Green to reverse the cancellation of Plaintiff's schedule, asked Plaintiff to submit another reasonable accommodation request.

126.    Upon information and belief, Plaintiff's reasonable accommodation process was intended to aggravate him, stress him and make his health worse and in retaliation for his FMLA approved sick leave, EEOC charges and complaints of discrimination.

127.    Upon information and belief, Human Resources has never contacted Mr. Fasolino about the transfer.

128.    Upon information and belief, Ms. Bergtraum's desire to keep Plaintiff's off of FPCM's main floor and primary office space outweighed Plaintiff's request for reasonable accommodation.

129.    Mr. Valente, in his last email to Plaintiff, sarcastically stated that "courts have determined that a request to change supervisors is not a reasonable accommodation."

130.    On January 5, 2017, Plaintiff emailed Gloria Deschamps, again concerning unresolved ID access card permission, and she again failed to respond.

131.    On the same day, Plaintiff was called to another impromptu interrogation, which upon information and belief, may have been audio taped without Plaintiff's knowledge.

132.    Upon information and belief, the meeting was aimed at provoking Plaintiff to act in an aggressive manner and to goad Plaintiff into calling Mr. Green a liar.

133.    After this meeting, Mr. Green sent Plaintiff an email that placed significant restrictions on Plaintiff's work environment. Mr. Green also ordered Plaintiff to relinquish his work-issued cell phone without any reason as to why.

134.    Plaintiff forwarded the aforementioned email to the Chancellor James B. Milliken and Provost Vita C. Rabinowitz stating that this was "workplace retaliation and harassment" and he again asked for a reasonable accommodation.

135.    On January 9, 2017, CUNY's Human Resources office deployed Ms. Pinar Ozgu, Chief of Staff and University Director of HR Investigations. Mr. Ozgu, emailed Plaintiff in response to his January 5, 2017 email to Chancellor Milliken and directed Plaintiff back to Michael Valente.

136.    On January 11, 2017, Joseph Piazza emailed Plaintiff with new procedures regarding sick leave. Upon information and belief, this was another adverse action against Plaintiff due to his race (African-American) and was also an act of retaliation after Plaintiff's complaints of discriminatory treatment, grievances, FMLA sick leave and EEOC charges.

137.    Upon information and belief, from September 2016 to January 2017 the abuse became progressively worse. Plaintiff was subjected to routine impromptu interrogations by VII management, approximately one per week.

138.    Time restrictions were placed on Plaintiff's ID access card without notice or reason. Plaintiff was also excluded from meetings that he reasonably should have been included in.

139.    Plaintiff's reasonable accommodation requests were denied without any reason of an undue hardship. Moreover, no reasonable accommodation compromise was offered by CUNY, Plaintiff's whereabouts were unreasonably scrutinized and his work computer was compromised.

140.    As opposed to transferring Plaintiff upstairs to the Energy & Facility Sustainability Unit, CUNY transferred him to another cubicle within the Department of Vendor Integrity & Investigations.

141.    Upon information and belief, all aforementioned adverse employment actions were taken against Plaintiff due to his race (African-American), his disability and corresponding reasonable accommodation request, and as acts of retaliation for his numerous complaints, both

formal and informal, regarding discriminatory treatment, EEOC charge, and FMLA approved sick leave.

142.    Upon information and belief, similarly situated non-African-American employees were not subjected to this type of adverse treatment.

143.    Upon information and belief, similarly situated non-disabled employees who had not requested reasonable accommodations were not subjected to this type of adverse treatment.

144.    Upon information and belief, similarly situated employees who did not complain about discrimination were not subjected to this type of adverse treatment.

145.    Upon information and belief, similarly situated employees who did not take approved FMLA sick leave were not subjected to this type of adverse treatment.

146.    As a result of the aforementioned events, Plaintiff has been and is still continuously subjected to discriminatory and retaliatory treatment at work, which has created an overall hostile work environment.

**FIRST CAUSE OF ACTION**
**Discrimination Based Upon Race in Violation of**
**Title VII, 42 U.S.C. 2000e et seq.**
**(As Against City University of New York)**

147.    Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained in the above paragraphs of this Complaint as though fully set forth in this paragraph of the Complaint.

148.    At all relevant times, City University of New York was an "employer" within the meaning of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), because such entity had more than fifteen employees.

149.    At all relevant times, Plaintiff was a "person" within the meaning of Title VII, 42 U.S.C. § 2000e.

150.    The discriminatory actions of the Defendant were invidious and repugnant.

151.    Defendant discriminated against Plaintiff on the basis of his race (African-American), in violation of Title VII, by treating him differently from and less favorably than similarly situated employees, subjecting him to disparate working conditions, involuntarily transferring Plaintiff and other disparate terms and conditions.

152.    As a direct and proximate result of Defendant's unlawful discriminatory conduct, in violation of Title VII, Plaintiff has suffered and continues to suffer monetary and/or economic harm, including, but not limited to, loss of past and future income, compensation, and benefits, for which he is entitled to an award of monetary damages and other relief, including, but not limited to, attorneys' fees and expenses.

153.    As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of Title VII, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to, depression and humiliation, embarrassment, and degradation in front of City University of New York personnel.

154.    The Defendant caused Plaintiff a tremendous amount of unnecessary stress, anxiety, loss of self-esteem and self-confidence, emotional pain and suffering.

155.    The Defendant's discriminatory actions, in violation of Title VII, were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's civil rights, for which he is entitled to an award of punitive or exemplary damages.

156.    That by reason of the foregoing, Plaintiff suffered and continues to suffer irreparable injury and monetary damages in excess of one million dollars ($1,000,000.00), as well as punitive damages, costs, and attorney's fees, and any other relief this Court may find just and proper.

## SECOND CAUSE OF ACTION
**Discrimination Based Upon Race in Violation of
New York State Human Rights Law
(As Against All Defendants)
(Pendent Jurisdiction)**

157.    Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained in the above paragraphs of this Complaint as though fully set forth in this paragraph of the Complaint.

158.    At all relevant times, City University of New York was an "employer" within the meaning of Executive Law § 292(5) and within the meaning of the Administrative Code § 8-102(5) because it had more than four (4) persons in its employ at all relevant times.

159.    Plaintiff is an "employee" within the meaning of Executive Law § 292(6)

160.    Defendants discriminated against Plaintiff on the basis of his race (African-American), in violation of the New York State Human Rights Law by treating him differently from and less favorably than similarly situated employees who were not African-American, by subjecting him to disparate working conditions, involuntarily transferring Plaintiff and other disparate terms and conditions.

161.    As a direct and proximate result of Defendants' unlawful discriminatory conduct, in violation of the New York State Human Rights Law, Plaintiff has suffered and continues to suffer monetary and/or economic harm, including, but not limited to, loss of past and future income, compensation, and benefits, for which he is entitled to an award of monetary damages and other relief, including, but not limited to, attorneys' fees and expenses.

162.    As a direct and proximate result of Defendants' unlawful discriminatory conduct, in violation of the New York State Human Rights Law, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress.

163.    That by reason of the foregoing, Plaintiff suffered and continues to suffer irreparable injury and monetary damages in excess of one million dollars ($1,000,000.00) , as well as punitive damages, costs, and attorney's fees, and any other relief this Court may find just and proper.

**THIRD CAUSE OF ACTION**
**Discrimination Based Upon Race in Violation of**
**New York City Human Rights Law**
**(As Against All Defendants)**
**(Pendent Jurisdiction)**

164.    Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained in the above paragraphs of this Complaint as though fully set forth in this paragraph of the Complaint.

165.    Plaintiff is a "person" within the Administrative Code Sec. 8-102(1) et seq.

166.    Defendants' discriminated against Plaintiff on the basis of his race (African-American), in violation of the New York City Human Rights Law (pursuant to Sec. 8-101, et seq. of the Administrative Code), by treating him differently from and less favorably than similarly situated employees who were not African-American, subjecting him to disparate working conditions, involuntarily transferring Plaintiff and other disparate terms and conditions.

167.    As a direct and proximate result of Defendants' unlawful discriminatory conduct, in violation of the New York City Human Rights Law, Plaintiff has suffered and continues to suffer monetary and/or economic harm, including, but not limited to, loss of past and future income, compensation and benefits, for which he is entitled to an award of monetary damages and other relief, including, but not limited to, attorneys' fees and expenses.

168.    As a direct and proximate result of Defendants' unlawful discriminatory conduct, in violation of the New York City Human Rights Law, Plaintiff has suffered and continues to

22

suffer monetary and/or economic harm, including, but not limited to, loss of past and future income, compensation, and benefits, for which he is entitled to an award of monetary damages and other relief, including, but not limited to, attorneys' fees and expenses.

169.    As a direct and proximate result of Defendants' unlawful discriminatory conduct, in violation of the New York City Human Rights Law, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress.

170.    That by reason of the foregoing, Plaintiff suffered and continues to suffer irreparable injury and monetary damages in excess of one million dollars ($1,000,000.00), as well as punitive damages, costs, and attorney's fees, and any other relief this Court may find just and proper.

### FOURTH CAUSE OF ACTION
**Retaliation in Violation of**
**Title VII, 42 U.S.C. 2000e et seq.**
**(As Against City University of New York)**

171.    Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained in the above paragraphs of this Complaint as though fully set forth in this paragraph of the Complaint.

172.    In violation of Title VII, 42 U.S.C. 2000e et seq., Defendant retaliated against Plaintiff for his multiple complaints and grievances regarding discrimination, and for filing two EEOC Complaints for its unlawful discrimination, harassment, and hostile work environment, all of which were in violation of Federal, State, and City law.

173.    As a direct and proximate result of Defendant's unlawful retaliatory conduct in violation of Federal laws, Plaintiff has suffered and continues to suffer monetary and/or economic harm, including, but not limited to, loss of past and future income, compensation and benefits, for

which he is entitled to an award of monetary damages and other relief, including, but not limited to, attorneys' fees and expenses.

174.    As a direct and proximate result of Defendant's unlawful retaliatory conduct in violation of Federal laws, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress.

175.    Defendant is liable to Plaintiff for this unlawful retaliation.

176.    By reason of the foregoing, Plaintiff suffered and continues to suffer irreparable injury and monetary damages in excess of one million dollars ($1,000,000.00), as well as punitive damages, costs, attorney's fees, and any other relief this Court may find just and proper.

**FIFTH CAUSE OF ACTION**
**Retaliation in Violation of**
**New York State Human Rights Law**
**(As Against All Defendants)**
**(Pendent Jurisdiction)**

177.    Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained in the above paragraphs of this Complaint as though fully set forth in this paragraph of the Complaint.

178.    In violation of New York State Executive Law § 296 et seq., Defendants retaliated against Plaintiff for his multiple complaints and grievances regarding discrimination, and for filing two EEOC Complaints for its unlawful discrimination, harassment, and hostile work environment, all of which were in violation of Federal, State, and City law

179.    As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of New York State laws, Plaintiff has suffered and continues to suffer monetary and/or economic harm, including, but not limited to, loss of past and future income, compensation and

benefits, for which he is entitled to an award of monetary damages and other relief, including, but not limited to, attorneys' fees and expenses.

180.    As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of New York State laws, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress.

181.    Defendants are liable to Plaintiff for this unlawful retaliation.

182.    By reason of the foregoing, Plaintiff suffered and continues to suffer irreparable injury and monetary damages in excess of one million dollars ($1,000,000.00), as well as punitive damages, costs, attorney's fees, and any other relief this Court may find just and proper.

**SIXTH CAUSE OF ACTION**
**Retaliation in Violation of**
**New York City Human Rights Law**
**(As Against All Defendants)**
**(Pendent Jurisdiction)**

183.    Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained in the above paragraphs of this Complaint as though fully set forth in this paragraph of the Complaint.

184.    In violation of New York City Administrative Code § 8-107, et seq., Defendants retaliated against Plaintiff for his multiple complaints and grievances regarding discrimination, and for filing two EEOC Complaints for its unlawful discrimination, harassment, and hostile work environment, all of which were in violation of Federal, State, and City law.

185.    As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of City laws, Plaintiff has suffered and continues to suffer monetary and/or economic harm, including, but not limited to, loss of past and future income, compensation and benefits, for

which he is entitled to an award of monetary damages and other relief, including, but not limited to, attorneys' fees and expenses.

186.    As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of City laws, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress.

187.    Defendants are liable to Plaintiff for this unlawful retaliation.

188.    By reason of the foregoing, Plaintiff suffered and continues to suffer irreparable injury and monetary damages in excess of one million dollars ($1,000,000.00), as well as punitive damages, costs, attorney's fees, and any other relief this Court may find just and proper.

**SEVENTH CAUSE OF ACTION**
**Discrimination Based Upon Disability in Violation of the**
**Americans with Disabilities Act ("ADA")**
**(As Against City University of New York)**

189.    Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained in the above paragraphs of this Complaint as though fully set forth in this paragraph of the Complaint.

190.    Defendants discriminated against Plaintiff on the basis of his disability in violation of the ADA, by treating him differently from and less favorably than non-disabled employees, and by subjecting him to disparate working conditions and other disparate terms and conditions.

191.    As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of the ADA, Plaintiff has suffered and continues to suffer monetary and/or economic harm, including, but not limited to, loss of past and future income, compensation, and benefits, for which he is entitled to an award of monetary damages and other relief, including, but not limited to, attorneys' fees and expenses.

192.    As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of the ADA, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress, anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, as well as physical injury, for which he is entitled to an award of compensatory and monetary damages and other relief.

193.    Defendants' discriminatory actions in violation of the ADA were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's civil rights, for which he is entitled to an award of punitive or exemplary damages.

194.    That by reason of the foregoing, Plaintiff suffered and continues to suffer irreparable injury and monetary damages in excess of one million dollars ($1,000,000.00), as well as punitive damages, costs, and attorney's fees, and any other relief this Court may find just and proper.

**EIGHTH CAUSE OF ACTION**
**Discrimination Based Upon Disability in Violation of**
**New York State Human Rights Law**
**(As Against All Defendants)**
**(Pendent Jurisdiction)**

195.    Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained in the above paragraphs of this Complaint as though fully set forth in this paragraph of the Complaint.

196.    Defendants discriminated against Plaintiff on the basis of his disability in violation of the New York State Human Rights Law by treating him differently from and less favorably than similarly situated employees who were not disabled, and subjecting him to disparate working conditions and other disparate terms and conditions.

197.    As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the New York State Human Rights Law, Plaintiff has suffered and continues to suffer monetary and/or economic harm, including, but not limited to, loss of past and future income, compensation and benefits, for which he is entitled to an award of monetary damages and other relief, including, but not limited to, attorneys' fees and expenses.

198.    As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the New York State Human Rights Law, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress.

199.    That by reason of the foregoing, Plaintiff suffered and continues to suffer irreparable injury and monetary damages in excess of one million dollars ($1,000,000.00), as well as punitive damages, costs, and attorney's fees, and any other relief this Court may find just and proper.

**NINTH CAUSE OF ACTION**
**Discrimination Based Upon Disability in Violation of**
**New York City Human Rights Law**
**(As Against All Defendants)**
**(Pendent Jurisdiction)**

200.    Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained in the above paragraphs of this Complaint as though fully set forth in this paragraph of the Complaint.

201.    Defendants discriminated against Plaintiff on the basis of his disability in violation of the New York City Human Rights Law (pursuant to Sec. 8-101, et seq. of the Administrative Code) by treating him differently from and less favorably than similarly situated employees who were not disabled and by subjecting him to disparate working conditions and other disparate terms and conditions.

202.    As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the New York City Human Rights Law, Plaintiff has suffered and continues to suffer monetary and/or economic harm, including, but not limited to, loss of past and future income, compensation and benefits, for which he is entitled to an award of monetary damages and other relief, including, but not limited to, attorneys' fees and expenses.

203.    As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the New York City Human Rights Law, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress.

204.    That by reason of the foregoing, Plaintiff suffered and continues to suffer irreparable injury and monetary damages in excess of one million dollars ($1,000,000.00), as well as punitive damages, costs, and attorney's fees, and any other relief this Court may find just and proper.

**TENTH CAUSE OF ACTION**
**Hostile Work Environment**
**(As Against All Defendants)**

205.    Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained in the above paragraphs of this Complaint as though fully set forth in this paragraph of the Complaint.

206.    Defendants discriminated against Plaintiff on the basis of his race (African-American), retaliated against him for both formal and informal complaints of discrimination, involuntarily transferred Plaintiff, and denied his reasonable accommodation request in violation of Federal, State, and City laws, by treating him differently from and less favorably than similarly situated employees who were not African-American and subjecting him to disparate working conditions and other disparate terms and conditions.

207.    As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of Federal, State, and City laws, Plaintiff has suffered and continues to suffer monetary and/or economic harm, including, but not limited to, loss of past and future income, compensation and benefits, for which he is entitled to an award of monetary damages and other relief, including, but not limited to, attorneys' fees and expenses.

208.    As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of Federal, State, and City laws, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress.

209.    Defendants are liable to Plaintiff for creating this hostile work environment.

210.    By reason of the foregoing, Plaintiff suffered and continues to suffer irreparable injury and monetary damages in excess of one million dollars ($1,000,000.00), as well as punitive damages, costs, attorney's fees, and any other relief this Court may find just and proper.

**ELEVENTH CAUSE OF ACTION**
**Retaliation in Violation of**
**FMLA, 29 U.S.C. § 2600 et seq.**
**(As Against City University of New York)**

211.    Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained in the above paragraphs of this Complaint as though fully set forth in this paragraph of the Complaint.

212.    In violation of the FMLA, Defendants retaliated against Plaintiff for requesting and taking FMLA leave due to his disability, by continuously denying his request for a reasonable accommodation, in violation of Federal laws.

213.    As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of Federal laws, Plaintiff has suffered and continues to suffer monetary and/or economic harm, including, but not limited to, loss of past and future income, compensation and benefits for

himself and his family, for which he is entitled to an award of monetary damages and other relief, including, but not limited to, attorneys' fees and expenses.

214.    As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of Federal laws, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress.

215.    Defendants are liable to Plaintiff for this unlawful retaliation.

216.    By reason of the foregoing, Plaintiff suffered and continues to suffer irreparable injury and monetary damages in excess of ONE MILLION DOLLARS ($1,000,000.00), as well as punitive damages, costs, attorney's fees, and any other relief this Court may find just and proper.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that this Court grant judgment, awarding Plaintiff:

      A.  Monetary damages as against Defendants;

      B.  Costs;

      C.  Disbursements;

      D.  Expenses;

      E.  Attorney's fees;

      F.  Interest; and

      G.  Any other relief this Court deems just and proper.

Dated:  New York, New York
        May 24, 2017

                                  BALLON STOLL BADER & NADLER, P.C.


                                  By:_____s/Marshall Bellovin_____
                                       MARSHALL B. BELLOVIN (MB5508)
                                       *Attorneys for Plaintiff*
                                       729 Seventh Avenue, 17th Floor
                                       New York, N.Y. 10019
                                       (212) 575-7900