UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- X

MARCUS STINSON,

                       Plaintiff,

        -v-

CITY UNIVERSITY OF NEW YORK, JUDITH
BERGTRAUM, VINCENT GREEN, JOHN
ANTONELLI, and RESEARCH FOUNDATION
OF THE CITY UNIVERSITY OF NEW YORK,

                       Defendants.

-------------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: June 6, 2018

17-cv-3949 (KBF)

OPINION & ORDER

KATHERINE B. FORREST, District Judge:

      In this action, plaintiff Marcus Stinson asserts a host of federal, state, and local employment discrimination claims, which he alleges were based both upon his race (African-American) and his alleged disability (depression). On May 24, 2017, Stinson filed suit under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"), 42 U.S.C. §§ 1981, 1983, and 1985, the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12111 et seq., the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 et seq., the Executive Law of the State of New York, New York State Human Rights Law §§ 296 et seq. ("NYSHRL"), and the Administrative Code of the City of New York, New York City Human Rights Law, §§ 8-101 et seq. ("NYCHRL").

      Defendants all move to dismiss, arguing, inter alia, that Stinson has failed to state a claim of discrimination, retaliation, or hostile work environment, and,

moreover, that several of his claims are barred by the Eleventh Amendment.

RFCUNY argues that it is not properly considered Stinson's employer, and thus

that all claims against it and its employees should be dismissed.

For the reasons set forth below, the Court GRANTS both motions to dismiss.

I. FACTUAL BACKGROUND

The following facts are drawn from the Second Amended Complaint ("SAC")

(ECF No. 65) and assumed true for purposes of this motion.

Plaintiff Marcus Stinson is an African-American man diagnosed with

depression; he has been employed by the City University of New York ("CUNY")

since February 2007. (SAC ¶¶ 2, 22.) He worked first as a College Assistant, and

was promoted on July 20, 2009 to CUNY Office Assistant and assigned to the Office

of Facilities, Planning, Construction and Management ("FPCM"). (Id. ¶¶ 22–23.)

Plaintiff alleges that he performed "out-of-title duties" from April 2009 through

September 2015, as a "Facilities Coordinator." (Id. ¶ 24.) Stinson sues several

defendants: 1) CUNY; 2) Judith Bergtraum, CUNY's Vice Chancellor of FPCM; 3)

Research Foundation of the City University of New York ("RFCUNY"), a not-for-

profit that provides CUNY with administrative infrastructure and manages CUNY

employees; 4) Vincent Green, an RFCUNY employee and director of Vendor

Integrity and Investigations ("VII"), and plaintiff's supervisor from September 2015

through August 2017; and 5) John Antonelli, an RFCUNY employee, Executive

Director of Administration for FPCM, and defendant Green's superior.

A. <u>Plaintiff's Transfer</u>

On September 17, 2015, plaintiff was involuntarily transferred to the Vendor Integrity and Investigations Department ("VII"). (<u>Id.</u> ¶ 27.) His supervisor in his new department was defendant Green, who is African-American. (<u>Id.</u> ¶¶ 12, 27.) Defendant Antonelli informed Stinson that the transfer was due to budgetary concerns. (<u>Id.</u> ¶¶ 14, 29.) Plaintiff also alleges that CUNY informed him that defendant Bergtraum, thought that the transfer would be a "good fit" for plaintiff. (<u>Id.</u> ¶ 30.) He alleges that, upon information and belief, his transfer was "due to his race (African-American) and disability (depression)." (<u>Id.</u> ¶ 32.) He claims he was the only employee—out of over one hundred—transferred out of the FPCM at this time. (<u>Id.</u> ¶ 35.)

B. <u>Plaintiff's First Medical Leave & Complaints about His Transfer</u>

Two days after learning of his transfer, plaintiff went on approved medical leave ("FMLA") for, <u>inter alia</u>, depression. (<u>Id.</u> ¶ 47.) He remained on leave from September 21, 2015 through November 11, 2015. (<u>Id.</u>)

On October 5, 2015, plaintiff emailed defendant Bergtraum, complaining that he believed that his transfer was racially motivated. (<u>Id.</u> ¶ 36.) She replied on October 14, 2015, stating that his transfer was "based on staffing needs of the Vendor Integrity Unit." (<u>Id.</u> ¶ 38.) On October 16, 2015, plaintiff emailed Bergtraum again, requesting an alternative transfer to the Energy & Facility Sustainability Unit. (<u>Id.</u> ¶ 48.) Bergtraum did not respond to this request. (<u>Id.</u> ¶ 49.) Plaintiff alleges, upon information and belief, that his request was denied

both as retaliation for him taking sick leave and for complaints of discrimination, and also due to his race and disability.[1]

## C. Plaintiff's Requests for a Modified Schedule

Prior to plaintiff's scheduled November 2015 return to work, he made a request for a modified work schedule upon his return; CUNY subsequently required him to visit a doctor of its choosing for a second opinion. (Id. ¶¶ 56–57.) He claims that the CUNY-approved doctor advised plaintiff to take Xanax and to return to work. (Id. ¶ 58.) On November 23, 2015, the Human Resources Department denied plaintiff's request for a modified schedule, cc'ing defendant Bergtraum on the correspondence. (Id. ¶ 59.) Plaintiff alleges that during this period, his timesheets were under investigation and scrutiny. (Id. ¶¶ 53–55, 64.)

## D. Plaintiff's Additional Assigned Tasks and an Offensive Statement

Plaintiff claims that he was assigned "additional, menial tasks" outside of his normal duties including emptying file cabinets, assembling storage boxes, and moving boxes between different rooms in the office.[2] (Id. ¶ 70.) He further alleges that he attended a meeting with defendant Green and several other employees at which one employee said to plaintiff: "from what I understand you are going to be the muscle that moves the boxes."[3] (Id. ¶ 72.) He claims that "nobody made any attempt to correct this statement" and that defendant Green "looked at plaintiff with agreement." (Id.)

---

[1] Plaintiff repeats this allegation after each new adverse employment action in the complaint; the Court will not, however, detail each such allegation in its recitation of facts.
[2] Plaintiff does not specify in which time period these additional tasks were assigned.
[3] Plaintiff does not state when this occurred, or which employee made this statement.

4

E. Plaintiff's Formal Grievances

On December 30, 2015, plaintiff filed a Step One grievance with Human Resources for his transfer and for "out-of-title work" as a Facilities Coordinator. (Id. ¶ 79.) On February 18, 2016, his grievance was denied in full. (Id. ¶ 82.)

On February 17, 2016, plaintiff submitted a Step Two grievance to CUNY's Office of Labor Relations. (Id. ¶ 85.) This grievance was denied in full on April 18, 2016. (Id. ¶ 92.) Plaintiff alleges, upon information and belief, that the decision features inaccurate statements from defendant Green, including that plaintiff himself approached Green about the possibility of a transfer to VII. (Id.) Plaintiff also alleges, upon information and belief, that the decision contained numerous other inaccuracies including, inter alia, that his out-of-title claim was moot, based on missing a filing date. (Id. ¶¶ 93–97.)

On or about March 7, 2016, plaintiff filed a charge of racial discrimination with the Equal Employment Opportunity Commission ("EEOC"). (Id. ¶ 86.) Sometime in March 2016,[4] plaintiff claims he was "questioned about circumstances of his employment, including, but not limited to, the then-pending Step 2 grievance and FMLA leave" in a meeting with defendant Green and two others. (Id. ¶ 90.) He further alleges that on March 14, 2016, Green attempted to change plaintiff's work schedule. (Id. ¶ 91.)

On June 28, 2016, plaintiff filed an additional charge of discrimination with the EEOC. (Id. ¶ 105.)

---

[4] Plaintiff does not specify whether this meeting occurred before or after his EEOC charge was filed.

F.  Allegations of Harassment

The latter part of plaintiff's complaint details a list of allegedly-hostile interactions with his superiors in his final year of employment.  For example, plaintiff alleges, in conclusory fashion, that meetings were held about him (Id. ¶¶ 109–110), jokes were made about him (Id. ¶ 106), and he was given work that caused him to have "an anxiety attack" (Id. ¶¶ 112–13).  He further alleges, upon information and belief, that defendant Green "coordinated with . . . IT technicians . . . to mechanically compromise plaintiff's computer in an effort to frustrate his work productivity."[5]  (Id. ¶ 129.)  He alleges that defendant Green and another supervisor, Joseph Piazza "routinely walked by his cubicle just to stare at him."  (Id. ¶ 148.)  Plaintiff claims that there were numerous instances of similar "harassment" that escalated between September 2016 and January of 2017.

Plaintiff was issued several written reprimands during this period, all authored in part by defendant Antonelli's office: first, on October 3, 2016; second, on October 26, 2016; third, on November 16, 2016; and fourth, sometime in December 2016.[6]  (Id. ¶¶ 116, 125, 135.)  He claims that in the previous ten years he had never received written reprimands.  (Id. ¶ 88.)

Plaintiff also complains about two separate occasions at which he fell asleep at his desk.  In the first incident, on October 5, 2016, Piazza banged on his desk to

---

[5] In this least plausible of allegations, plaintiff claims that a computer malfunction was the result of a retaliatory conspiracy between the IT department and defendant Green, and that he therefore "refrained from using his work computer."  (Id. ¶¶ 127–29.).

[6] Plaintiff claims that the fourth reprimand was placed in his file without his knowledge in violation of the Collective Bargaining Agreement ("CBA").  (Id. ¶ 146.)

wake him up.  (Id. ¶ 119.)  In the second incident, on October 13, 2016, defendant

Green took photographs of him asleep, which were later used in a disciplinary

hearing.  (Id. ¶ 120.)

On October 3, 2016, plaintiff made a "reasonable accommodation request" for

a transfer to the Energy & Facility Sustainability Unit, citing discrimination and

retaliation; in response, Human Resources informed plaintiff that it needed

clarification from his doctor.  (Id. ¶¶ 117, 124.)  His request was denied on

November 8, 2016.  (Id. ¶ 130.)  Though he appealed the denial, defendant CUNY

denied it on November 21, 2016.  (Id. ¶¶ 134, 138.)  Plaintiff alleges that this second

accommodation, and its appeal, were denied for both retaliatory and discriminatory

reasons.  (Id. ¶¶ 131–141.)

### G. January 2017 Disciplinary Hearing & March 2017 Suspension

After a January 5, 2017 meeting, plaintiff was told to relinquish his cell

phone and prohibited from entering the sixteenth floor.  (Id. ¶¶ 168–170.)  He

subsequently emailed the Chancellor and Provost of CUNY.  (Id. ¶ 171.)  On

January 10, 2017, plaintiff was subject to a disciplinary hearing at which defendant

CUNY offered him a forty-five day suspension without pay provided that he would

be automatically terminated if he faced future disciplinary charges; plaintiff did not

accept this offer.[7]  (Id. ¶ 173.)  Plaintiff took sick leave on January 11 and 12, and,

on January 13, requested medical leave under the FMLA for, inter alia, depression.[8]

---

[7] Plaintiff also claims that he did not receive formal notification for this hearing until January 12, 2017.  (Id. ¶ 174.)

[8] His request was formalized on January 25, 2017.  (Id. ¶ 182.)

(Id. ¶¶ 175, 178.)  He was later informed that his FMLA application was incomplete and lacking in specifics.  (Id. ¶¶ 185–86.)

After plaintiff disputed his disciplinary charges, Human Resources notified him that CUNY would settle his charges with an unpaid suspension of ten work days; he declined because the offer "failed to address Mr. Green's hostile supervision of plaintiff."  (Id. ¶¶ 183–84.)

On March 16, 2017, for reasons not specified in the complaint, plaintiff was suspended from work for thirty days.[9]  (Id. ¶ 192.)  He did not return until May 18, 2017, however he took sick leave on May 19, 2017.[10]  (Id. ¶ 199.)  On May 23, 2017, defendant was suspended without pay and was immediately escorted out of the building without his personal belongings.  (Id. ¶ 206.)  Plaintiff filed a third grievance with CUNY on July 12, 2017; it was dismissed on August 15, 2017, and its appeal denied on August 17, 2017.  (Id. ¶¶ 213, 216–17.)

H. July 2017 Disciplinary Hearing and Termination

A second disciplinary hearing was held on July 13, 2017.  (Id. ¶ 214.)  On August 18, 2017, the Office of Labor Relations issued a decision letter informing plaintiff that his employment was terminated.  (Id. ¶ 218.)  Plaintiff claims that his termination was based on discrimination and retaliation.

I.  Similarly Situated Employees

---

[9] Plaintiff does not specify whether such leave was paid or unpaid.
[10] Plaintiff claims that he attempted to convey his concern about returning to defendant Green's supervision and attempted to get clarity as to "how to properly communicate his absences."  (Id. ¶¶ 193, 195, 198.)  Human Resources sent plaintiff a "job abandonment notice" on May 11, 2017.  (Id. ¶ 196.)

Throughout the complaint, plaintiff refers to two non-African-American, non-disabled employees who he claims were not subjected to the same retaliatory and discriminatory treatment. Both employees hold the title "Project Manager," which is distinct from plaintiff's job. (Id. ¶ 40.)

In 2015, the first employee, Paul Cipriani, was "berated by his supervisor," Jay Goldstein, a RFCUNY employee. (Id. ¶¶ 41–42.) Plaintiff alleges that, upon complaining to FPCM management, Cipriani received a pay increase, a new supervisor, and new job responsibilities. (Id. ¶¶ 43–44.)

The second employee, Julie Dreizen, had her employment terminated by FPCM management; however, unlike plaintiff, her termination was documented as a layoff, so that she would be able to collect employment benefits. (Id. ¶ 210.)

Apart from these facts, plaintiff does not allege any facts as to Cipriani's or Dreizen's treatment, conduct, or circumstances.

## II. LEGAL PRINCIPLES

### A. Federal Rule of Civil Procedure 12(b)(6)

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must provide grounds upon which his claim rests through "factual allegations sufficient 'to raise a right to relief above the speculative level.'" ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). In other words, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." Starr v. Sony BMG Music Entm't, 592 F.3d 314, 321 (2d Cir. 2010) (quoting

Twombly, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In applying this standard, the Court accepts as true all well-pled factual allegations, but does not credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action."  Id.  The Court will give "no effect to legal conclusions couched as factual allegations."  Port Dock & Stone Corp. v. Oldcastle Ne., Inc., 507 F.3d 117, 121 (2d Cir. 2007) (citing Twombly, 550 U.S. at 555).  A plaintiff may plead facts alleged upon information and belief "where the facts are peculiarly within the possession and control of the defendant."  Arista Records, LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir. 2010). But, if the Court can infer no more than the mere possibility of misconduct from the factual averments—in other words, if the well-pled allegations of the complaint have not "nudged [plaintiff's] claims across the line from conceivable to plausible"—dismissal is appropriate.  Twombly, 550 U.S. at 570; Starr, 592 F.3d at 321 (quoting Iqbal, 556 U.S. at 679).

B. <u>Sovereign Immunity</u>

The Eleventh Amendment of the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. Amend. XI. "[F]ederal courts lack jurisdiction not only over suits against a state brought by citizens of other states . . . but also over suits against such state brought by their own citizens." <u>Dube v. State Univ. of N.Y.</u>, 900 F.2d 587, 594 (2d Cir. 1990). Thus, absent a state's waiver of its sovereign immunity or an abrogation of that immunity by Congress, the Eleventh Amendment bars all federal suits for any kind of relief against the State of New York. <u>See</u> <u>Will v. Mich. Dep't of State Police</u>, 491 U.S. 58, 66 (1989).

A state's immunity extends to "arms of the state," such as CUNY, as well as state officials in their official capacities. <u>Clissuras v. CUNY</u>, 359 F.3d 79, 82 (2d Cir. 2004); <u>Pennhurst St. Sch. & Hosp. v. Halderman</u>, 465 U.S. 89, 101–102 (1984).

The Supreme Court has held that Title I of the ADA is not a valid abrogation of the States' sovereign immunity and thus the Eleventh Amendment bars claims brought under Title I against states or state agencies. <u>Bd. of Trs. of the Univ. of Ala. v. Garrett</u>, 531 U.S. 356, 368–74 (2001). Moreover, the Second Circuit has recently held that claims brought under the ADA for employment discrimination can <u>only</u> be brought only under Title I of the ADA. <u>Mary Jo C. v. New York State &</u>

Local Ret. Sys., 707 F.3d 144, 171 (2d Cir. 2013) (holding that the ADA "unambiguously limits employment discrimination claims to Title I").

Additionally, the Eleventh Amendment bars suits in federal court against non-consenting states for violations of state law, such as the NYSHRL and the NYCHRL. Pennhurst, 465 U.S. at 119–21; see, e.g., Koumantaros v. CUNY, 2007 WL 840115, at *5 (S.D.N.Y. Mar. 19, 2007) (finding that the Eleventh Amendment operates as a bar to NYSHRL and NYCHRL claims where there was "no valid waiver or abrogation"). New York State has not consented to be subject to either the NYSHRL or the NYCHRL in federal court. See, e.g., Cajuste v. Lechworth Developmental Disabilities Serv., 2005 WL 22863, at *3 (S.D.N.Y. Jan. 5, 2005) ("New York has not consented to suit in federal court through the [NYSHRL].) Feingold v. New York, 366 F.3d 138, 149 (2d Cir. 2004) ("[W]e have found no evidence that the State has consented to suit in federal court under the NYCHRL").

Similarly, New York has not consented to be subject to the FMLA for claims of self-care, nor has its sovereign immunity been abrogated by Congress. Coleman v. Court of Appeals of Maryland, 566 U.S. 30, 43 (2012).[11]

C. Racial Discrimination

1. Title VII and NYSHRL

Under both Title VII and the NYSHRL, it is unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against

---

[11] Plaintiff asks this Court to "remedy" an "inequity" in the case law that has held that the state's sovereign immunity was abrogated for FMLA § 2612(a)(1)(C), the family-leave provision, but not for § 2612(a)(1)(D), the self-care provision. However, the Supreme Court's holding in Coleman is unambiguous and binding upon this Court.

any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e–2(a)(1).

McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) established the nature of a prima facie case of discrimination under Title VII. To establish a prima facie case, a plaintiff must "make a showing (1) that she is a member of a protected class, (2) that she was qualified for the position she sought, (3) that she suffered an adverse employment action, and (4) can sustain a minimal burden of showing facts suggesting an inference of discriminatory motivation." Littlejohn v. City of N.Y., 795 F.3d 297, 311 (2d Cir. 2015). If a plaintiff has satisfied these prima facie requirements, "a presumption of discriminatory intent arises in her favor, at which point the burden of production shifts to the employer, requiring that the employer furnish evidence of reasons for the adverse action." Id.

The Second Circuit recently clarified the interplay between the McDonnell Douglas framework and the pleading requirements set forth in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009). "The facts required . . . to be alleged in the complaint need not give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination. They need only give plausible support to a minimal inference of discriminatory motivation." Littlejohn, 795 F.3d at 311; see also Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 87 (2d Cir. 2015). "Nevertheless, 'a discrimination complaint . . . must [still] at a minimum assert nonconclusory factual matter sufficient to nudge its claims across the line from conceivable to plausible to

proceed.'" Dooley v. JetBlue Airways Corp., 636 Fed. App'x 16, 20 (2d Cir. 2015) (quoting EEOC v. Port Auth. of N.Y. & N.J., 768 F.3d 247, 254 (2d Cir. 2014)) (ellipsis and alterations in original).

In order to show discrimination based on disparate impact, plaintiff must plausibly allege that "[h]e was similarly situated in all material respects to the individual with whom []he seeks to compare [him]self." Johnson v. Andy Frain Servs., Inc., 638 Fed. App'x 68, 70 (2d Cir. 2016) (citing Mandell v. Cty. of Suffolk, 316 F.3d 368, 379 (2d Cir. 2003) (affirming dismissal where the complaint did not allege that plaintiff and her co-workers had similar job descriptions or responsibilities).

2. NYCHRL

Pursuant to amendments enacted by the New York City Council in the Local Civil Rights Restoration Act of 2005, and in order to effectuate the NYCHRL's "uniquely broad and remedial purposes," Kaur v. N.Y.C. Health & Hosps. Corp., 688 F. Supp. 2d 317, 339 (S.D.N.Y. 2010), "courts must analyze NYCHRL claims separately and independently from any federal and state law claims, construing the NYCHRL's provisions broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 109 (2d Cir. 2013) (internal citations and quotations omitted).

Section 8-107(1)(a) of the NYCHRL makes it unlawful "[f]or any employer or an employee or agent thereof, because of the . . . race . . . of any person, to refuse to

hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."  In order to prevail on a race-based discrimination claim under the NYCHRL, plaintiff must only show that he was treated "less well" than other employees "because of a discriminatory intent."  See Mihalik, 715 F.3d at 110 (citation omitted).  That being said, the NYCHRL "is not a general civility code", and "[t]he plaintiff still bears the burden of showing that the conduct is caused by a discriminatory motive."  Id. (internal quotation omitted).

 D. Retaliation

  1. Title VII and NYSHRL

 Title VII also includes an anti-retaliation provision, which makes it unlawful "for an employer to discriminate against any . . . employee[ ] . . . because [that individual] opposed any practice" made unlawful by Title VII or "made a charge, testified, assisted, or participated in" a Title VII investigation or proceeding.  42 U.S.C. § 2000e–3(a).  To state a prima facie case of retaliation under Title VII or the NYSHRL, "a plaintiff must present evidence that shows '(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action.'"  Littlejohn, 795 F.3d at 315–16 (quoting Hicks v. Baines, 593 F.3d 159, 164 (2d Cir. 2010)). As with a Title VII discrimination claim, "the allegations in the complaint need only give plausible support to the reduced prima facie requirements that arise under McDonnell

Douglas in the initial phase of a Title VII litigation." Id. at 316; see also Dooley, 636 Fed. App'x at 19.

"[P]roof of causation can be shown either: (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." Gordon v. N.Y.C. Bd. of Educ., 232 F.3d 111, 117 (2d Cir. 2000). But while temporal proximity can provide indirect evidence of causation, "[w]here timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise." Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 95 (2d Cir. 2001).

2. NYCHRL

As previously noted, employment discrimination claims under the NYCHRL are to "be evaluated separately from counterpart claims" brought under federal and state law. Kolenovic v. ABM Indus. Inc., 361 Fed. App'x 246, 248 (2d Cir. 2010); see also Mihalik, 715 F.3d at 109. To "prevail on a retaliation claim under NYCHRL, the plaintiff must show that []he took an action opposing [his] employer's discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." Wolf v. Time Warner, Inc., 548 Fed. App'x 693, 696 (2d Cir. 2013) (quoting Mihalik, 715 F.3d at 112). Although the "but for" causation standard does not apply to retaliation claims

under the NYCHRL, see Mihalik, 715 F.3d at 116, a plaintiff still must establish that "there was a causal connection between his protected activity and the employer's subsequent action, and must show that a defendant's legitimate reason for his termination was pretextual or 'motivated at least in part by an impermissible motive.'" Weber v. City of New York, 973 F. Supp. 2d 227, 273 (E.D.N.Y. 2013) (quoting Brightman v. Prison Health Serv., Inc., 970 N.Y.S.2d 789, 792 (2d Dep't 2013)).

E. Disability Discrimination

Plaintiff's discrimination claims under the ADA and the NYSHRL are also evaluated under the McDonnell Douglas standard. See, e.g., Benson v. Otis Elevator Co., 557 Fed. App'x 74, 76 (2d Cir. 2014) (McDonnell Douglas burden-shifting framework applies to disability claims under NYSHRL); Fall v. N.Y. State United Teachers, 289 Fed. App'x 419, 420 (2d Cir. 2008) (McDonnell Douglas burden-shifting framework applies to disability claims under ADA and NYSHRL).

In order to establish a prima facie case of discrimination under the ADA and NYSHRL, a plaintiff must show "(a) that his employer is subject to the ADA; (b) that he is disabled within the meaning of the ADA or perceived to be so by his employer; (c) that he was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and (d) that he suffered an adverse employment action because of his disability." Brady v. Wal-Mart Stores, Inc., 531 F.3d 127, 134 (2d Cir. 2008).

Importantly, the adverse employment action must be causally linked to the alleged act of discrimination on the basis of disability.  See Parker v. Sony Pictures Entm't, Inc., 260 F.3d 100, 107 (2d Cir. 2001) (a "causal connection between a disability and an adverse employment action" is "requisite" for establishing liability for discrimination claims under the ADA); Pearson v. Unification Theological Seminary, 785 F. Supp. 2d 141, 163 (S.D.N.Y. 2011) ("causal showing for a prima facie case" of disability discrimination is "requisite").  While the NYCHRL embodies a broader conception of actionable discrimination and of disability than its federal and state counterparts, it still requires that the adverse employment action take place "under circumstances that give rise to an inference of discrimination."  Spiegel v. Schulmann, 604 F.3d 72, 80 (2d Cir. 2010).

To establish a prima facie case of discrimination based on failure to accommodate under the ADA, NYSHRL, and NYCHRL, a plaintiff must establish that 1) he is a person with a disability; 2) defendant had notice of his disability; 3) plaintiff could perform the essential functions of the job at issue with reasonable accommodation; and 4) defendant refused to make such accommodations.  Graves v. Finch Pruyn & Co., 457 F.3d 181, 184 (2d Cir. 2006); see Tse v. New York University, 2013 WL 5288848, at *10 (S.D.N.Y. Sept. 19, 2013).

F. Hostile Work Environment

In order to plead a hostile work environment under federal or state law, a plaintiff must allege that his "workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the

conditions of the victim's employment and create an abusive working environment."

Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (internal quotation marks and citations omitted). The conduct must be "severe or pervasive enough to create an objectively hostile or abusive work environment." Id. It must also be "sufficiently continuous and concerted" to have altered the conditions of an employee's employment. Lopez v. S.B. Thomas, Inc., 831 F.2d 1184, 1190 (2d Cir. 1987). The totality of the circumstances must be considered, "including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Dawson v. Cty. of Westchester, 373 F.3d 265, 272 (2d Cir. 2004) (quoting Harris, 510 U.S. at 23.)

In order to prevail on a hostile work environment claim under the NYCHRL, a plaintiff must show that she was treated "less well than other employees" on the basis of a protected characteristic. See Alvarado v. Nordstrom, Inc., 685 Fed. App'x 4, 8 (2d Cir. 2017) (quoting Mihalik, 714 F.3d at 110). Although there is "no doubt that the standard for proving a NYCHRL hostile work environment claim is lower than the standard for proving Section 1981 and NYSHRL hostile work environment claims," Alvarado, 685 Fed. App'x at 8, "[t]he plaintiff still bears the burden of showing that the conduct is caused by a discriminatory motive," and that she is "treated less well . . . because of a discriminatory intent." Mihalik, 715 F.3d at 110 (internal quotations omitted).

G.  FMLA Retaliation

To make out a prima facie FMLA retaliation claim, plaintiff must show that: "(1) he exercised rights protected under the FMLA; (2) he was qualified for his position, (3) he suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent." Potenza v. City of New York, 365 F.3d 165, 168 (2d Cir. 2004). Plaintiff raises an inference of retaliatory intent if he demonstrates that exercising his rights under the FMLA constituted a negative factor in defendants' decision to terminate him.  See Sista v. CDC Ixis N. Am., Inc., 445 F.3d 161, 176 (2d Cir. 2006); Gillingham v. Geico Direct, 2008 WL 189671, at *4–5 (E.D.N.Y. Jan. 18, 2008); see also Hale v. Mann, 219 F.3d 61, 68 (2d Cir. 2000) (The FMLA "protects an employee from discharge or demotion by an employer if that action is motivated by the employee's taking of leave pursuant to the FMLA") (citing 29 U.S.C. § 2614(a)(1)).

H. Employment Relationship

To successfully assert employment discrimination, harassment, and retaliation cases under federal, state, and local laws, plaintiff must establish an employment relationship.  Eisenberg v. Advance Relocation & Storage, Inc., 237 F.3d 111, 113 (2d Cir. 2000).

"To prevail in an employment action against a defendant who is not the plaintiff's direct employer, the plaintiff must establish that the defendant is part of an 'integrated enterprise' with the employer."  Parker v. Columbia Pictures Indus., 204 F.3d 326, 341 (2d Cir. 2000).  An integrated enterprise may exist "where the

plaintiff is an employee of a wholly-owned corporate subsidiary" or "where the plaintiff's employment is subcontracted by one employer to another, formally distinct, entity." Gulino v. N.Y.S. Educ. Dep't, 460 F.3d 361, 378 (2d Cir. 2006). However, an integrated enterprise cannot be found in the absence of evidence of: 1) interrelation of operations; 2) centralized control of labor relations; 3) common management; and 4) common ownership or financial control. Cook v. Arrowsmith Shelburne, Inc., 69 F.3d 1235, 1240–41 (2d Cir. 1995). The Second Circuit has placed particular emphasis on the second factor, focusing on the entity that made final decisions regarding employment matters related to discrimination. Id.; see also Brown v. Daikin Am., Inc., 2011 WL 10842873, at *5 (S.D.N.Y. Aug. 19, 2011).

While "whether two related entities are sufficiently integrated to be treated as a single employer is generally a question of fact" and thus usually not suitable for resolution on a motion to dismiss, a plaintiff must at least allege facts so that the claim is plausible and gives fair notice to defendants of his theory. Brown, 756 F.3d at 226; Barbosa v. Continuum Health Partners, Inc., 716 F. Supp. 2d 210, 219 (S.D.N.Y. 2010). Indeed, where the four Cook factors are not adequately alleged in the pleadings, courts have ruled that the plaintiffs may not pursue the single integrated employer theory. See, e.g., Munson v. Diamond, 2017 WL 4863096 at *6 (S.D.N.Y. June 1, 2017).

The National Labor Relations Board considered the relationship between CUNY and RFCUNY in 2002, and conclusively held that they were not considered a single integrated employer, reviewing all four Cook factors, and finding that each

one weighed against such a result.  In re Research Foundation of City of New York, 3337 N.L.R.B. 965, 971 (2002).[12]

To assess whether a "joint employer" relationship exists, courts examine "commonality of hiring, firing, discipline, insurance, records, and supervision." Lima v. Addeco, 634 F. Supp. 2d 394, 400 (S.D.N.Y. 2009).

III. DISCUSSION

All defendants move to dismiss, arguing, inter alia, sovereign immunity and failure to state a claim.

Plaintiff's complaint falls short of establishing the requisite connections between his race and disability and the alleged adverse employment actions.  He has failed to nudge his claims from conceivable to plausible; he lists numerous adverse actions against him—hearings, suspensions, and finally termination—but fails to connect the dots between these actions and any inference whatsoever of discriminatory animus.  This is not enough for plaintiff to hang his hat on; Twombly and Littlejohn require more, even at the pleading stages.

Furthermore, this Court lacks subject matter jurisdiction over the claims against defendant CUNY and defendant Bergtraum in her official capacity.

For these reasons, and the others set out below, the Court DISMISSES all claims.

---

[12] The cases in this district plaintiff cites that held otherwise were decided prior to this result.

A. <u>Sovereign Immunity</u>

CUNY moves under Rule 12(b)(1) to dismiss plaintiff's ADA and FMLA claims against it, and also to dismiss plaintiff's NYSHRL and NYCHRL disability discrimination claims against both it and defendant Bergtraum in her official capacity, for lack of subject matter jurisdiction. Plaintiff, in opposition, argues that his ADA claim should be construed as a Title II claim, and therefore that New York's immunity was abrogated, and invites the Court to ignore Supreme Court precedent and abrogate New York's immunity under the self-care provisions of the FMLA.

Plaintiff's arguments are plainly wrong as a matter of law. The Second Circuit's holding in <u>Mary Jo C.</u> is binding precedent upon this Court—therefore this Court cannot construe plaintiff's claim under Title II of the ADA. <u>Mary Jo C.</u>, 707 F.3d at 171. <u>Coleman</u> is binding upon this Court as well; the Supreme Court clearly distinguishes the self-care provisions (for which immunity has <u>not</u> been abrogated) from the family-care provisions (for which it has). <u>Coleman</u>, 566 U.S. at 43. Thus, the Court agrees with defendants; as to defendant CUNY, and defendant Bergtraum in her official capacity, it lacks subject matter jurisdiction.

Therefore, the Court dismisses the Seventh, Eighth, Ninth, and Eleventh causes of action as to defendant CUNY, and the Eighth and Ninth against defendant Bergtraum in her official capacity for lack of subject matter jurisdiction.

B.  Racial Discrimination Claims (Counts I, II, and III)

Plaintiff's first three causes of action allege discrimination based on race in violation of Title VII, as well as state and local laws.  All defendants move to dismiss for failure to state a claim, stating that plaintiff has not stated a prima facie case of discrimination; specifically, that he has not met the "minimal burden of showing facts suggesting an inference of discrimination."  Littlejohn, 795 F.3d at 311.  They say that his pleadings do not give rise to an inference of either discriminatory intent or disparate impact based upon race.  The Court agrees; though plaintiff's burden is indeed "minimal" at this stage; he has failed to meet it. Littlejohn, 795 F.3d at 311. Plaintiff's complaint is merely a litany of adverse employment actions which ended in his termination.  It does not, however, state a claim for discrimination based on race.

At no point in his lengthy complaint does plaintiff allege that any defendant commented on his race in any way.  He asks the Court to connect the dots between a single statement (made by another employee not named in this complaint), that plaintiff was "going to be the muscle that moves the boxes" with discriminatory intent.  He also asks the Court to interpret Bergtraum's statement that the new assignment and supervisor would be a "good fit" as impermissibly motivated by discriminatory animus based on race.  The Court is not persuaded.  These stray comments are not enough to build a plausible claim for discriminatory intent.  See, e.g., Bailey v. Frederick Godman, Inc., 2006 WL 738435, at *4 (S.D.N.Y. Mar. 23, 2006) (finding that "stray comments . . . without some demonstrable connection to

plaintiff's discharge, are insufficient to give rise to an inference of discrimination);

Gobin v. N.Y.C. Health & Hosps. Corp., 2006 WL 2038621, at *6 (S.D.N.Y. July 19, 2006) (finding a "few and isolated" discriminatory statement insufficient to establish an inference of discrimination).

Nor is his disparate impact claim plausible. As a threshold matter, both Cipriani and Dreizen hold different job titles than plaintiff. Moreover, the only two sentences in the complaint that refer to Cipriani's and Dreizen's conduct do not remotely allege that they engaged in similar conduct. That Dreizen was dismissed in a different manner than plaintiff is probative of very little without accompanying allegations that she was dismissed for similar reasons. That Cipriani's complaint about his supervisor did not lead to further disciplinary action is similarly irrelevant. In sum, plaintiff has failed to plausibly allege that he "was similarly situated in all material respects to the individual[s] with whom []he seeks to compare [him]self." Mandell, 316 F.3d at 379.

While the NYCHRL has an even lesser burden at this stage of litigation, plaintiff fails to meet that as well; his complaint simply does not plausibly allege that his race played any role in the adverse actions taken against him.

As a result, the Court DISMISSES plaintiff's First, Second, and Third causes of action against all defendants.

C.  Retaliation Claims (Counts IV, V, and VI)

Plaintiff's Fourth, Fifth, and Six causes of action are for retaliation under Title VII, state, and local statutes.  All defendants move to dismiss for failure to state a claim.

Plaintiff, in opposition, urges the Court to look at the close temporal proximity (one month and six days) from the time of his third grievance to CUNY to his termination.  This argument is unavailing.

Adverse actions against plaintiff began well before his first formal complaint in 2016.  And while his termination was proximate in time to his third formal complaint, plaintiff had been subject to two formal disciplinary hearings and two suspensions prior to the filing of the third complaint.

In the absence of any other evidence of retaliation, the Court concludes that temporal proximity alone, especially in the context of years of disciplinary proceedings and adverse actions, see Slattery, 248 F.3d at 95, is not enough to "nudge [plaintiff's] claims across the line from conceivable to plausible."  Twombly, 550 U.S. at 570.

Therefore, the Court DISMISSES plaintiff's Fourth, Fifth, and Sixth causes of action.

D.  Disability Discrimination (Counts VII, VIII, and IX)

Plaintiff's Seventh, Eighth, and Ninth Causes of action allege discrimination based on disability under the ADA, the NYSHRL, and the NYCHRL.

As noted above, sovereign immunity bars the claims against CUNY and Bergtraum; as such the Court considers only the RFCUNY defendants. The RFCUNY defendants move to dismiss for failure to state a claim. The Court agrees.

Here, too, plaintiff has failed to make his <u>prima facie</u> case for the simple reason that he cannot make out the fourth, causal prong: that any adverse employment actions were made on the basis of his disability or even give rise to such an inference. <u>Parker</u>, 260 F.3d at 107; <u>Spiegel</u>, 604 F.3d at 80.

In support of his claims, plaintiff alleges that defendant Green banged on his desk to wake him up and took a picture of him asleep. Because plaintiff claims that his habit of falling asleep at his desk was a side-effect of his medication for depression, he claims this supports a claim of disability-based discriminatory animus. Plaintiff also alleges that the CUNY-recommended doctor prescribed anti-depressants and told plaintiff to return to work, and that this, too, evidences an intent to discriminate. The Court disagrees.

Plaintiff has not plausibly alleged any animus based upon discrimination; furthermore, his allegations about failure to provide a reasonable accommodation apply only to CUNY, who is immune from suit under the ADA.

Therefore, the Court DISMISSES the Seventh, Eighth, and Ninth causes of action against all defendants.

E.  Hostile Work Environment (Count X)

Plaintiff's tenth cause of action alleges a hostile work environment under federal, state, and local laws.  All defendants move to dismiss for failure to state a claim.

The Court agrees; plaintiff has failed to state a claim.  His specific allegations include, inter alia: 1) he was assigned menial tasks, 2) that he was called "the muscle;" 3) that defendant Green made a joke about placing a spy camera in his own office; 4) that Piazza banged on plaintiff's desk to wake him up; 5) that defendant Green and the IT technicians engaged in a conspiracy to thwart his productivity by slowing down his computer; and 6) that defendant Green and Piazza would walk by his desk to stare at him.

Not only are these conditions neither "severe" nor "pervasive" enough to create an "abusive working environment," plaintiff has not plausibly alleged that any of them were connected with his race or disability, as discussed above.  Harris, 510 U.S. at 21.  This is fatal to his federal, state, and local claims.

The Court therefore DISMISSES plaintiff's tenth cause of action against all defendants.

F.  FMLA (Count XI)

Plaintiff's Eleventh Cause of Action is against defendants CUNY and RFCUNY for retaliation in violation of FMLA.  The nub of his claim is that he was subjected to retaliation because of his leave of absence pursuant to FMLA when defendant Green changed his work schedule.

As noted above, defendant CUNY may not be sued under the FMLA; thus the Court considers only defendant RFCUNY, who moves to dismiss for failure to state a claim.

Plaintiff's claim fails here for the same reasons his previous claims fail—his bare allegations that action was taken against him in retaliation for his FMLA leave are conclusory and speculative.

Thus, the Court DISMISSES plaintiff's Eleventh cause of action as to all defendants.

G. Rehabilitation Act (Count XII)

Plaintiff's Twelfth cause of action is against CUNY and RFCUNY for discrimination based upon disability in violation of § 504 of the Rehabilitation Act, 29 U.S.C. § 794(a)(2), et seq. Defendants move to dismiss for failure to state a claim.

Plaintiff does not oppose the motion to dismiss; as a result the Court considers this claim abandoned. See Lipton v. Cty. of Orange, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004) (noting that courts generally "deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments for dismissing such a claim").

As a result, the Court DISMISSES plaintiff's Twelfth cause of action against all defendants.

H. Claims against RFCUNY

In addition to its arguments above, RFCUNY moves to dismiss all claims against it on the argument that it is not plaintiff's employer and therefore cannot be

held liable for any claims of discrimination and harassment that he brings forward. For his part, plaintiff argues that RFCUNY is properly suable under the "single integrated employer" doctrine; it also, for the first time in its opposition papers, names RFCUNY as a joint employer.

As an initial matter, it is uncontested that RFCUNY was not plaintiff's employer. Moreover, plaintiff fails to adequately plead that RFCUNY should be considered either a single integrated or joint employer with CUNY. His pleadings, voluminous in their facts alleging discrimination, merely allege the following: 1) that "RFCUNY provides CUNY with administrative structure, including but not limited to management of CUNY employees, with the power to hire, discipline, suspend, and terminate CUNY employees;" 2) that "12,000 RFCUNY employees work at CUNY full-time and could reasonably be considered joint employees of a single integrated employer;" and 3) that CUNY and RFCUNY were a single integrated employer "because such entity had more than fifteen employees."

Plaintiff has failed to allege facts that would allow the Court to analyze the CUNY/RFCUNY relationship under the Cook factors. Thus, while the single integrated employer doctrine is frequently decided at summary judgment, in this case, as in Munson, plaintiff has failed to carry his minimal burden. Moreover, the Court finds the NLRB decision persuasive.

Therefore, in addition to the reasons set forth above, the Court also dismisses all twelve causes of action as to the RFCUNY defendants.

IV. CONCLUSION

For the reasons set forth above, the Court GRANTS both motions to dismiss. The Clerk of Court is directed to close the motions at ECF Nos. 68 and 71, and to terminate this case.


SO ORDERED.

Dated:     New York, New York
           June 6, 2018

_____
KATHERINE B. FORREST
United States District Judge